IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

---

J. C. *a minor, by and through his parents and natural guardians, Mr. J.C. and Mrs. K.C.*, MR. J.C., and MRS. K.C.

      *Plaintiffs*,

  v.

SOUTH HILLS ASSEMBLY OF GOD, HILLCREST CHRISTIAN ACADEMY,

      *Defendant*.

Civil Action No. 2:21-cv-1558

Hon. William S. Stickman IV

---

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

### I. INTRODUCTION

Plaintiffs J.C., a minor by and through his parents Mr. J.C. and Mrs. K.C., and Mr. J.C. and Mrs. K.C. in their own right, filed a Complaint against Defendant South Hills Assembly of God, Hillcrest Christian Academy ("Academy"). (ECF No. 1). Their Complaint brings a race discrimination claim under Title VI of the Civil Rights Act of 1964 at Count I, a breach of contract claim at Count II, an intentional infliction of emotional distress claim at Count III, a liability for student-on-student harassment claim at Count IV, and a violation of the Pennsylvania Human Relations Act ("PHRA") claim at Count V. (*Id.*). The Academy filed a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6) requesting the Court dismiss Count I, Count II, and Count V of the Complaint in their entirety, and dismiss the request for attorney's fees at Count III. (ECF No. 4). For the following reasons, the Court will grant in part and deny in part Academy's motion.

## II.   FACTUAL BACKGROUND

J.C. is a Black and Hispanic sixteen-year-old boy who attended the Academy from August 2017 through December 2020 for junior high and high school. (ECF No. 1, ¶¶ 5-6). The Academy is a private Christian school serving students in kindergarten through Grade 12. (*Id.* at ¶ 2). Beginning in or around August 2020, J.C. began experiencing bullying by classmates from the Academy. (*Id.* at ¶ 7). A student known as A.P. began bullying J.C. on the basis of him being Black and/or Hispanic. (*Id.*). The racial harassment led J.C. to experience severe emotional and physical distress. (*Id.* at ¶ 8).

On September 9, 2020, J.C.'s pediatrician, Dr. Tonja DiCamillo ("Dr. DiCamillo"), submitted a report to the Academy detailing J.C.'s diagnosis. Dr. DiCamillo stated that "in the last few months [J.C. had] become excessively more obsessed with his weight, eating habits, and exercise . . . [and she would] diagnose [J.C.] with an eating disorder – restrictive eating disorder with exercising; anxiety with OCD traits; and situational depression." (*Id.* at ¶ 9). On September 10, 2020, Plaintiffs met with the Academy and informed Mr. George Wilson and Pastor Zach of the bullying being perpetrated against J.C. by his classmates. (*Id.* at ¶ 10). Plaintiffs requested that the school investigate and closely monitor the complicit students. (*Id.*). On September 16, 2020, Plaintiffs emailed the Academy to emphasize the takeaways from the September 10, 2020 meeting, which included that "(a) all of J.C.'s teachers should be aware of the seriousness of his health concerns; (b) understanding the exclusion J.C. was experiencing by his classmates; and (c) the school's responsibility to enforce school rules and conduct." (*Id.* at ¶ 11).

On September 30, 2020, J.C. began receiving Eye Movement Desensitization and Reprocessing ("EMDR") therapy. (*Id.* at ¶ 12). At that time, Plaintiffs contend that J.C. "exhibited both intense anger towards his parents as well as severe anxiety related to the trauma at school."

(*Id.*).  On or around October 13, 2020, J.C. broke his arm while in gym class.  (*Id.* at ¶ 13).  On the same day, J.C.'s parents took him to Children's Hospital to address his broken arm, which turned into a twenty-eight day stay at the hospital.  (*Id.* at ¶15).  From October 13, 2020 to November 10, 2020, J.C. was admitted as an inpatient to address his broken arm and the escalation of his eating disorder.  (*Id.*).  On November 11, 2020, and continuing for two weeks, J.C. participated in a full-time program at the Center for Eating Disorders at UPMC Western Psychiatric Hospital.  (*Id.* at ¶ 16).  On November 20, 2020, Plaintiffs met with the Academy to discuss how J.C.'s school-based interactions were affecting his health.  (*Id.* at ¶ 17).  Plaintiffs provided the Academy with the following documents:

> a. Letters from J.C.'s pediatrician and therapist with details of his condition as well as his trauma-related diagnoses.
> b. Email exchanges between Plaintiffs, Mr. George Wilson, and Pastor Zach, during which Defendant's bullying policy was discussed.
> c. Text messages with Ms. McCowan, requesting that she follow up with the situation involving students talking behind J.C.'s back at the beginning of the school year.
> d. Text messages that Plaintiffs sent to A.P.'s family, requesting a meeting to address the situation instigated by A.P., to which no reply was received.
> e. Pictures of J.C. before and after the physical effects of his eating disorder.
> f. Pictures of the X-ray of J.C.'s broken arm.
> g. Video recording of students A.P. and J.N., confirming misconduct in violation of school policy.
> h. Copies of page 32 and page 35 of Defendant's student handbook, outlining relevant offenses, specifically the Level 2 Offense of Bullying and the Level 4 Offense of Gross Misconduct.

(*Id.*).  On December 8, 2020, Plaintiffs and the Academy met for a second time via Zoom because Plaintiffs discovered a text message from J.C. to his girlfriend stating that A.P. encouraged his friends to exclude J.C. from all groups and socialization because he is Black.  (*Id.* at ¶ 18).  On December 9, 2020, Mr. J.C. emailed the Academy "documenting the two meetings the Parties had with each other . . . [and reminding Academy] that this was the second time J.C. had been subjected to race-based harassment in conjunction with the Academy, the first time being when the brother

3

of a classmate—both students at the Academy—called J.C. the 'N-word' in 6th grade." (*Id.* at ¶ 19).  On December 12, 2020, J.C. began intensive EMDR therapy continuing with weekly sessions through March 13, 2021.  (*Id.* at ¶ 21).  At the end of December 2020, Mr. J.C. and Mrs. K.C withdrew J.C. from the Academy.  (*Id.* at ¶ 22).  In January 2021, J.C. began attending a new school to finish the remainder of his tenth-grade year.  (*Id.* at ¶ 23).  J.C. has continued to require and receive mental health support for post-traumatic stress disorder.  (*Id.* at ¶ 24).

### III.    STANDARD OF REVIEW

A motion to dismiss filed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009); *see also DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 262–63 (3d Cir. 2008).  Although this Court must accept the allegations in the Complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556).  In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555.  Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable

inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

Generally, a court may not consider an extraneous document when reviewing a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). If parties present matters outside the pleadings and the court does not exclude them, the motion must be converted to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). When reviewing the sufficiency of a complaint, however, a court may consider attachments to it without converting the motion into one for summary judgment if they are integral to the allegations in the complaint and are authentic. *See In re Burlington*, 114 F.3d at 1426 (holding that a court may consider a "document integral to or explicitly relied upon in the complaint"); *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (same); *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 493 (3d Cir. 2017) (same); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *see also Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that a court may consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").[1]

---

[1] The Court may consider the Academy's 2020-2021 Parent and Student Handbook that the Academy attached as an exhibit to its motion without converting it to a motion for summary judgment because it is an undisputedly authentic document and at least one of Plaintiffs' claims is based on it. (Count II).

# IV.   ANALYSIS

## A.   Title VI of the Civil Rights Act of 1964 – Count I

At Count I, Plaintiffs bring a discrimination claim under Title VI of the Civil Rights Act of 1964 ("Title VI") alleging that the Academy violated the rights guaranteed to them.  (ECF No. 1, ¶¶ 25-35).  In response, the Academy argues that Plaintiffs have not pled sufficient facts to establish a *prima facie* case of race discrimination and, therefore, Count I should be dismissed for failure to state a claim.  (ECF No. 5, p. 5).  The Court disagrees.  Plaintiffs have sufficiently pled facts to support their claim.

Title VI prohibits intentional discrimination based on race in any program receiving federal funding.  *See* 42 U.S.C.A. § 2000d.  Plaintiffs allege the Academy receives federal funding and, therefore, the Court will apply the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  (ECF No. 1, ¶ 34).  It requires a plaintiff to first establish a *prima facie* case of discrimination.   To establish a *prima facie* case of race discrimination under *McDonnell Douglas* in an educational setting, a plaintiff must show that: (1) he is a member of a protected class; (2) he suffered an adverse action at the hands of the defendants in his pursuit of his education; (3) he is qualified to continue his pursuit of his education; and (4) that some additional evidence exists that establishes a causal nexus between the harm suffered and the plaintiff's membership in a protected class, from which a reasonable juror could infer, in light of common experience, that the defendant acted with discriminatory intent.  *See L. L. v. Evesham Twp. Bd. of Educ.*, 710 F. App'x 545, 548 (3d Cir. 2017) (quoting *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 275 (3d Cir. 2010)).  A plaintiff's burden at the *prima facie* stage is not intended to be "onerous"; rather, the purpose of the *prima facie* test is to "eliminate [ ] the most common nondiscriminatory reasons" for the defendant's actions.  *Texas Dept. of Community*

6

*Affairs v. Burdine*, 450 U.S. at 253–54, (1981).  If a plaintiff is successful in making a *prima facie* case of discrimination, the burden then shifts to the defendant, who must "articulate some legitimate non-discriminatory reason" for the adverse action.[2]  *McDonnell Douglas*, 411 U.S. at 802; *see also Alexander v. Sandoval*, 532 U.S. 275, 281 (2001).

Plaintiffs rely on circumstantial evidence to prove their Title VI claim.  *See Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 275 (3d Cir. 2014) (explaining violations of Title VI can be shown with either direct or circumstantial evidence).  The Academy does not dispute that Plaintiffs have pled sufficient facts to satisfy the first three elements of a *prima facie* case of race discrimination.  (ECF No. 5, pp. 4-5).  Instead, the Academy argues that Plaintiffs "offer no facts that the Academy's alleged conduct and/or inaction were based upon J.C.'s race, or, more importantly, taken because of J.C.'s race."  (*Id.* at p. 5).  The Court disagrees, and holds that Plaintiffs have adduced sufficient evidence to establish a *prima facie* case for the following reasons.

First, Plaintiffs informed the Academy, on several occasions, of their concerns regarding J.C.'s mistreatment by his peers.  Specifically, on September 10, 2020, Plaintiffs met with the Academy to discuss "the exclusion J.C. was experiencing by his classmates . . . [and] the school's responsibility to enforce school rules and conduct."  (ECF No. 1, pp. 3-4).  Plaintiffs restated their concerns in a follow-up email on September 16, 2020, and requested the Academy to investigate and closely monitor the students' conduct.  (*Id.*).  Then, Plaintiffs requested to meet with the Academy on November 20, 2020, and again on December 8, 2020.  (*Id.* at pp. 4-5).  Plaintiffs allege that the Academy did not intervene or respond to Plaintiffs' concerns regarding the race-

---

[2] The Academy does not articulate any legitimate non-discriminatory reason for the adverse action. (ECF No. 5).

based harassment they contend J.C. was being subjected to. (*Id.* at ¶¶ 19-20). These allegations are sufficient to demonstrate that the Academy's alleged inaction regarding the race-based harassment directed towards J.C. by its students support an inference that the Academy's actions were discriminatory. *See L.L.*, 710 Fed. Appx. at 549 (finding that "the complaint about the teacher's purported tacit acceptance of the student's use of a racial epithet . . . if proved at trial, [was] sufficient to support an inference that the School District's actions were discriminatory.") *Id.* The Court will deny Academy's motion to dismiss Count I.

## B. Count II - Breach of Contract

At Count II, Plaintiffs bring a breach of contract claim. (ECF No. 1, p. 7). They allege that a contract existed between the parties via the Academy's 2020-2021 Parent and Student Handbook ("Handbook"), and that the Academy breached their duty outlined in the Handbook's discipline policy by tolerating bullying between students. (*Id.* at pp. 8-10). In response, the Academy contends that there was not a contract between the parties. (ECF No. 5, p. 6). Additionally, the Academy argues that even if there was a contract, Plaintiffs did not identify a duty owed to J.C. that the Academy breached. (*Id.*).

To state a breach of contract claim under Pennsylvania law, the plaintiff must establish: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages. *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003). Here, the Academy disputes the existence of a contract. (ECF No. 5, p. 6). Generally, the relationship between a private school and its students is contractual in nature, and as such, agreements between parties concerning disciplinary procedures within a handbook are reviewed in the same way as any other agreement between two private parties. *See Hart v. Univ. of Pittsburgh*, 2014 WL 4218616, at *18 (W.D. Pa. 2014). A contract "is comprised of the written

8

guidelines, policies, and procedures as contained in the written materials distributed to the student over the course of his or her enrollment in the institution." *See Utah v. Strayer Univ.*, 667 Fed. Appx. 370, 371 (3d Cir. 2016). The existence of a contract between a student and a school depends on whether the school is a private or public institution. *Borrell v. Bloomsburg Univ.*, 955 F. Supp. 2d 390, 408 (M.D. Pa. 2013). For private institutions, a student handbook is treated as any other agreement between two private parties. *Id.* For public institutions, Pennsylvania courts have "declined to construe the student handbook . . . as a contract between the public university and the student." *Id.* Here, Plaintiffs allege that the Academy is a private institution, and that the parties had a contractual agreement via the Handbook. (ECF No. 1, ¶ 2); *see also* (ECF No. 1, ¶ 44) (Plaintiffs explaining that "the Handbook states that the parents' 'signature on the Student Application is your acceptance of Academy policies.'"). The Court agrees and holds that Plaintiffs have sufficiently pled this element of their claim.

The Academy additionally argues that even if a contract existed between the parties, Plaintiffs' breach of contract claim fails because they have not identified a duty owed to J.C. that was breached by the Academy. (ECF No. 5, p. 6). Plaintiffs are not required to articulate a *specific duty* that the Academy owed to J.C., instead, once the existence of a contract is established, a plaintiff must only "identify the *specific provision* in the [contract] which they alleged the defendants to have breached." *Borrell*, 955 F. Supp. 2d at 409 (emphasis added). In other words, the duty breached is the duty owed pursuant to a contract, not an individual. *Nationwide Mut. Ins. Co. v. CPB I*, 2007 WL 4198173, at *20 (M.D. Pa. 2007) (explaining "the difference between contract and tort actions is that the latter lie from a breach of duties imposed by law as a matter of social policy while the former lie from the breach of the duties imposed by mutual consensus agreements . . . .").

9

Plaintiffs have identified specific provisions in the Handbook which they allege the Academy has breached. They allege that on page twenty-one of the Handbook it states in part that "bullying . . . [is] repeated and intentional harassment whereby student(s) are targeted verbally, nonverbally or physically. . . [including] but [ ] not limited to ostracism, harassment on-line and or/ with the cell phone, as well as face-to-face confrontation." It also states that relational aggression is "the manipulation of social relationships . . . [including] the purposeful exclusion of a child from play or social groups." (ECF No. 1, p. 9); (ECF No. 4-1, p. 22). Additionally, Plaintiffs allege that the Academy considers bullying a "Level 2 Offense" and notes it is "unacceptable and will not be tolerated." (ECF No. 1, p. 9); (ECF No. 4-1, p. 22); (ECF No. 4-1, p. 33). Plaintiffs also allege that on pages twenty-eight and twenty-nine of the Handbook, the Academy describes its Discipline Policy, which in part states that "if the student's behavior or attitude indicates an uncooperative spirit or one that is out of harmony with the spirit and standards at Hillcrest Christian Academy, whether or not there is a definite breach of conduct, he/she may be requested to transfer." (ECF No. 1, p. 9); (ECF No. 4-1, p. 29). Lastly, Plaintiffs cite pages thirty-five and thirty-six of the Handbook, which defines Gross Misconduct as a Level Four Offense and describes it as "behavior on or off campus that is in conflict with the purpose or spirit of Hillcrest Christian Academy." (ECF No. 1, p. 9); (ECF No. 4-1, p. 36).

Plaintiffs allege that the provisions they cite from the Handbook indicate that a contract existed between the parties and that the Academy had a "duty to maintain a safe environment for all students such as J.C., free from bullying and gross misconduct." (ECF No. 1, p. 9). The Court agrees and holds that Plaintiffs have sufficiently pled that the Academy breached specific provisions outlined in the Handbook by "fail[ing] to intervene and appropriately discipline the students perpetrating the race-based harassment of J.C." (*Id.* at pp. 9-10); *Borrell*, 955 F. Supp.

10

2d at 409.  Lastly, Plaintiffs have sufficiently pled damages resulting from the breach.[3]  *See* (*Id.* at ¶¶ 51-52).  The Court will deny Academy's motion to dismiss Count II.

### 1.  Punitive damages and attorney's fees

At Count II of their Complaint, Plaintiffs request punitive damages and attorney's fees. (ECF No. 1, p. 10).  As to Plaintiffs' request for punitive damages, the Academy argues that Pennsylvania law does not permit the recovery of punitive damages in breach of contract actions. (ECF No. 5, p. 9).  As a general rule, an action for breach of contract alone will not support an award of punitive damages.  *See Project Mgmt. Inst., Inc. v. Ireland*, 2000 WL 375266, at *17 (E.D. Pa. 2000) (analyzing punitive damage recovery under intentional infliction of emotional distress but dismissing demand for punitive damage recovery under breach of contract); *see also Norco v. Allstate Ins. Co.*, 2012 WL 6762017, at *12 (W.D. Pa. 2012) (recognizing "punitive damages will not be assessed for a mere breach of contractual duties").  Punitive damages are only available following pleading and proof of an independent tort.  *Williams v. Hilton Group PLC*, 93 Fed. Appx. 384, 386 (3d Cir. 2004) (citing the Pennsylvania Superior Court when it stated that "courts are cautious about permitting tort recovery based on contractual breaches").  Therefore, since Plaintiffs' claim is based on a breach of contract, their demand for punitive damages fails as a matter of law.  The Court will grant Academy's motion to dismiss Plaintiffs' requests for punitive damages at Count II.

Plaintiffs also bring a request for attorney's fees at Count II.  (ECF No. 1, p. 10). Pennsylvania follows the "American Rule" that attorney's fees and costs are not recoverable from an adverse party unless a statute expressly authorizes the fees.  *See also McMullen v. Kutz*, 985 A.2d 769, 775 (Pa. 2009) ("[t]he general rule within this Commonwealth is that each side is

---

[3] The Academy does not dispute that Plaintiffs sufficiently pled damages.

responsible for the payment of its own costs and counsel fees absent bad faith or vexatious conduct
. . . this rule holds true unless there is express statutory authorization, a clear agreement of the
parties or some other established exception . . .").   Moreover, Pennsylvania courts have routinely
applied the American Rule to deny recovery of attorney's fees in breach of contract cases.   *Lewis
v. Delp Family Powder Coatings, Inc.*, 2011 WL 1230207, at *13 (W.D. Pa. 2011).   Here, Plaintiffs
do not plead an express statutory provision, a clear agreement by the parties, or some other
established exception.   The Court will grant Academy's motion to dismiss Plaintiffs' request for
attorney's fees at Count II.

### C.   Count III – Intentional Infliction of Emotional Distress

At Count III, Plaintiffs bring an intentional infliction of emotional distress ("IIED") claim.
(ECF No. 1, p. 10); *see Kazatsky v. King David Memorial Park*, 527 A.2d 988 (1987) (citing the
Restatement (Second) of Torts § 46(1) (1965)).   The Academy moves to dismiss Plaintiffs' request
for attorney's fees at Count III because no statute authorizes Plaintiffs to recover attorney's fees,
nor is there an identified provision in their contract to that effect.   (ECF No. 5, p. 10).   Similar to
Plaintiffs' request for attorney's fees at Count II, there is also no legal basis for recovery of
attorney's fees at Count III.   A demand for damages, including attorney's fees, may be stricken
when the damages are not legally recoverable in the cause of action.   *DeHart v. HomEq Servicing
Corp.*, 679 Fed. Appx. 184, 190 (3d Cir. 2017).   Here, Plaintiffs rely on the Restatement of Torts
for guidance in bringing their IIED claim.   The Restatement of Torts additionally states, "[a]side
from statutory provisions, a successful party in an action of tort is not entitled to compensation for
loss of time, attorney fees, or other expenses in the conduct of litigation.   He can recover only the
statutory costs . . ."   *Merck & Co. v. Knox Glass, Inc.*, 328 F. Supp. 374, 377, (E.D. Pa. 1971)
(citing Restatement (Second) of Torts § 914 comment c (1979)).   Plaintiffs do not plead that the

Academy has any statutory duty to compensate them for attorney's fees, nor do they plead a contractual obligation that requires Defendant to cover such fees and, therefore, Plaintiffs are not entitled to attorney's fees under Count III. The Court will grant Academy's motion to dismiss Plaintiffs' request for attorney's fees at Count III.

### D.  Count V – PHRA Claim

At Count V, Plaintiffs bring a race discrimination claim against the Academy pursuant to PHRA. *See* 43 P.S. §§ 951-963; (ECF No. 1, p. 13). The Academy argues that Plaintiffs' claim should be dismissed because they failed to first exhaust administrative remedies by filing a complaint with the Pennsylvania Human Relations Commission ("PHRC"). (ECF No. 5, p. 10). To bring a PHRA claim, a plaintiff must file an administrative complaint with the PHRC within 180 days of the alleged act of discrimination. *Olivieri v. County of Bucks*, 502 Fed. Appx. 184, 190 (3d Cir. 2012). The Third Circuit has explained that "[t]imeliness of exhaustion requirements are best resolved under Rule 12(b)(6) covering motions to dismiss for failure to state a claim." *Robinson v. Dalton*, 107 F.3d 1018, 1022 (3d Cir. 1997); *Olivieri*, 502 Fed. Appx at 190 ("If a plaintiff fails to file a timely complaint what the PHRC, then he or she is precluded from judicial remedies under the PHRA."); *Richardson v. Miller*, 446 F.2d 1247, 1248 (3d Cir. 1971) ("Since plaintiff failed to file a charge with the respective Commissions within the appropriate time periods, he is now foreclosed from pursuing the remedies provided by the Acts.").

Here, Plaintiffs state that on May 5, 2021, they *did* file a complaint with the PHRC. However, Plaintiffs make this allegation in their Brief in Opposition of the Motion to Dismiss, not in their Complaint. (ECF No. 10, p. 12). A brief in opposition is not a pleading from which the Court can consider new factual allegations to decide a defendant's motion to dismiss. *Lakkis v. Lahovski*, 2013 WL 2371214, at *12 (M.D. Pa. 2013). The Third Circuit has recognized that

"briefs are helpful only to the extent that they find support in the allegations set forth in the complaint." *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). Accordingly, when looking only to Plaintiffs' Complaint, they have failed to plead that they exhausted their administrative remedies by filing a PHRC complaint.  Without that foundation, any allegations in Plaintiffs' brief that reference a PHRC complaint cannot be used by this Court for support.  *See Nesgoda v. Lewistown Valley Enters.*, 2018 WL 6313617, at *3 (M.D. Pa. 2018) ("a court is generally limited to the allegations set forth in the pleadings . . . [and] [o]pposition briefs to a motion to dismiss may not be used to amend a complaint").  For the foregoing reasons, the Court will dismiss Count V without prejudice and grant leave to amend.

### V.    CONCLUSION

For these reasons, the Academy's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) will be granted in part and denied in part.  An order of Court will follow.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

1/16/22
Dated